IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KRISTIN RODGERS
  *Plaintiff*,

  v.                                     Civil Action No. ELH-19-3268

COMSO, INC., *et al.*,
  *Defendants*

**MEMORANDUM OPINION**

In a First Amended Complaint alleging employment discrimination, plaintiff Kristin Rodgers has sued COMSO, Inc. ("COMSO"); Eagle Alliance ("EA"); CSRA, Inc. ("CSRA"); and General Dynamics Information Technology ("General Dynamics" or "GDIT"). ECF 13 (the "Amended Complaint"). She asserts that she was "jointly employed by COMSO and EA/CSRA." *Id.* at 4. Further, she alleges that EA/CSRA is "now GDIT." *See id.* ¶ 40.

In particular, Rodgers alleges claims of sex discrimination (Count I) and retaliation (Count II), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* According to plaintiff, she worked for defendants as a Service Desk Technician with respect to a contract with the National Security Agency ("NSA"); she was terminated because of her gender; and defendants prevented her from obtaining any other work opportunities, in retaliation for engaging in civil rights activities protected under Title VII.

COMSO has moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF 19.[1] The motion is supported by a memorandum (ECF 20) (collectively, the "Motion") and one exhibit. ECF 20-1. Plaintiff opposes the Motion (ECF 23,

---

[1] By Order of March 11, 2019, the Court set April 13, 2020, as the deadline for EA, CSRA, and GDIT to respond to the Amended Complaint. ECF 22.

the "Opposition") and has submitted two exhibits.  ECF 23-1 and ECF 23-2.  Defendant has replied.  ECF 31.

The Motion is fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I.    Factual Background[2]

According to plaintiff, COMSO is incorporated and headquartered in Maryland.  ECF 13, ¶ 15.  And, at the relevant time, EA was owned by CSRA.  Further, she asserts that in April 2018, General Dynamics, a Virginia corporation headquartered in Virginia, *id.* ¶18, "acquired CSRA (and therefore EA) . . . ." *Id.*  ¶ 17.  Therefore, she asserts that GDIT is liable for damages caused by EA and CSRA.  *Id.*

During the relevant time, COMSO and EA/CSRA had a contract with the NSA.  *See id.* ¶ 19.  EA/CSRA was allegedly the "prime contractor on the NSA contract," *id.* ¶ 20, while COMSO was a "subcontractor." *Id.* ¶ 21.[3]

On August 27, 2013, COMSO hired Ms. Rodgers to serve as a Service Desk Technician with respect to the NSA contract.  *Id.* ¶¶ 19, 22.  Although COMSO paid plaintiff's salary, she was supervised by employees of both COMSO and EA/CSRA, including an EA/CSRA Manager and Operations Lead, and she performed her work at an EA/CSRA facility.  *Id.* ¶ 22.

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Amended Complaint or Motion "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] The Amended Complaint contains no factual allegations regarding what services defendants offer or any details concerning the NSA contract.

Plaintiff claims that she performed her job satisfactorily and never received any disciplinary infractions from either COMSO or EA/CSRA. *Id.* ¶ 23. However, on August 5, 2016, COMSO informed Ms. Rodgers that EA/CSRA had terminated her employment, effective immediately. *Id.* ¶ 24. COMSO allegedly "did not contest EA/CSRA's decision to fire Ms. Rodgers." *Id.* ¶ 28.

At the time, COMSO offered no grounds for the termination. *Id.* A few days later, COMSO told Ms. Rodgers that she had been fired because she was often late, had a "bad attitude," and was not completing work tickets. *Id.* ¶ 25. According to plaintiff, this explanation is "false and prextext for discrimination." *Id.*

Ms. Rodgers asserts that, around the time of her termination, EA/CSRA also fired another female Service Desk Technician. *Id.* ¶ 26. Yet, EA/CSRA did not terminate two male Service Desk Technicians, notwithstanding that these employees had been "written up for multiple infractions." *Id.* ¶ 27. Instead, EA/CSRA placed the male employees on a two-week probationary period. *Id.* Further, plaintiff alleges that her EA/CSRA manager "had a history of inappropriate behavior towards women and displayed an animus towards women." *Id.* ¶ 30.

Ms. Rodgers advised COMSO's Program Manager toward the end of August 2016, that she planned to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 31. In response, COMSO's Program Manager allegedly said, "'I wish you wouldn't do that or you'll get blackballed.'" *Id.*

Plaintiff submitted an EEOC Intake Questionnaire on September 2, 2016. *Id.* ¶ 4; ECF 23-1 ("EEOC Questionnaire"). Soon after, on September 8, 2016, Ms. Rodgers completed an intake interview with an EEOC employee. ECF 13, ¶ 5. The same day, she filed a Charge of Discrimination, alleging sex discrimination. *Id.* ¶ 6. She identified EA/CSRA as her employer.

*Id.* According to plaintiff, COMSO and EA/CSRA received notice of her charge of discrimination shortly thereafter. *Id.* ¶ 33.

In response to plaintiff's charge, COMSO and EA/CSRA allegedly "prevented" plaintiff "from obtaining another position on the NSA contract." *Id.* ¶ 34. According to plaintiff, beginning in September 2016, COMSO told her "that they recommended her for several administrative positions on EA/CSRA contracts," yet she was "turned down for each position." *Id.* ¶ 35. Further, in November 2016, COMSO told plaintiff that it had recommend her for a systems administrator position on a different EA/CSRA contract. *Id.* ¶ 36. But, COMSO told plaintiff that EA/CSRA "was not interested because they knew who she was, and that [she] was not allowed to return to EA/CSRA." *Id.* Plaintiff also alleges that in August 2019, EA/CSRA claimed that COMSO had disqualified her from positions, not EA/CSRA. *Id.* ¶ 37.

Plaintiff contacted the EEOC on November 3, 2016, due to "concerns of retaliation." *Id.* ¶ 7. Plaintiff alleges that the EEOC "drafted a separate charge" for her, based on retaliation, and again listed EA/CSRA as her employer. *Id.* She signed that Charge on the same date. *Id.*

On February 2, 2017, the EEOC transferred Ms. Rodger's case to the Maryland Commission on Civil Rights ("MCCR"). *Id.* ¶ 8. During its investigation, MCCR allegedly determined that the charges drafted by the EEOC should have included COMSO as one of plaintiff's joint employers. *Id.* ¶ 9. MCCR drafted a third Charge on September 29, 2017, specifically "naming COMSO as an employer." *Id.* ¶ 10. Plaintiff signed it on September 29, 2017. *Id.*; *see* ECF 20-1 ("MCCR Charge").

Plaintiff alleges that the EEOC issued a Notice of Right to Sue on February 22, 2019, but she never received it. ECF 13, ¶ 11; ECF 23-2 at 8. Plaintiff contacted the EEOC to inquire and,

on August 15, 2019, EEOC Investigator George Collins confirmed her call. ECF 13, ¶ 12; ECF 23-2 at 4. He also provided her with a copy of the right-to-sue letter. ECF 23-2 at 4.

This lawsuit was filed on November 13, 2019. ECF 1. Plaintiff asserts that the EEOC issued a Second Notice of Right to Sue, which she received on December 26, 2019. ECF 13, ¶¶ 12, 13.

Additional facts are included, *infra*.

## II. Standards of Review

### A. Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); s*ee also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192. Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco*

*v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

COMSO challenges the Court's subject matter jurisdiction on the ground that plaintiff failed to exhaust her administrative remedies. ECF 20 at 7-15. However, a plaintiff's failure to exhaust her administrative remedies before filing a Title VII claim does not strip a court of jurisdiction. In the case of *Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843 (2019), the Supreme Court held that exhaustion under Title VII is not jurisdictional. *Id.* at 1846. Instead, the Court explained that administrative exhaustion is a "claim-processing rule[] that must be timely raised to come into play." *Id.* Accordingly, whether plaintiff has satisfied the exhaustion requirement is not properly assessed under Rule 12(b)(1).

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the

rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Of course, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the

complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Motion is supported by one exhibit, ECF 20-1, and two exhibits are appended to the Opposition. ECF 23-1 and ECF 23-2. ECF 20-1 is Ms. Rodger's MCCR Charge, dated September 29, 2017. And, ECF 23-1 is Ms. Rodger's EEOC Questionnaire, dated September 2, 2016. In resolving the Motion, I may consider the EEOC materials, as these documents are referenced in the Amended Complaint and are integral to the suit. *See, e.g.*, *Webb v. Potomac Elec. Power Co.,* TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Hwy. Admin.*, JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

ECF 23-2 consists of an Affidavit of Ms. Rodgers and emails between Tonya Bana, Esq., and George Collins, an EEOC investigator, concerning Ms. Rodger's receipt of the EEOC right-to-sue letter. With respect to Ms. Rodger's Affidavit, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *accord Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). Thus, I may not otherwise consider Ms. Rodger's Affidavit in resolving the Motion. In contrast, I may consider the emails, as they are referenced in the Amended Complaint, integral to plaintiff's suit, and neither plaintiff nor COSMO contests their authenticity.

### C. Title VII Generally

As noted, plaintiff asserts claims of sex discrimination and retaliation against defendants under Title VII. ECF 13, ¶¶ 38-46.

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. It also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. *Id.* § 2000e–3; *see e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc).

To assert a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies. *See Davis*, 139 S. Ct. at 1851; *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). Because Maryland is a deferral state, a claim must be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e–5(b). If the EEOC finds "reasonable cause" to believe the charge

is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e–5(f)(1). On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of her right to sue in court. *Id.* § 2000e–5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc). Of relevance here, a complainant has 90 days to file suit in federal or state court after being notified of the right to sue. *Id.* § 2000e–5f(1).

As noted, the Supreme Court recently held that a plaintiff's failure to exhaust her administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728,

731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young*, 575 U.S. at 212-13 (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonnell Douglas* framework).

Reference to the avenues of proof serves to inform a court's evaluation of a motion to dismiss or for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden – shifting framework established in *McDonnell Douglas Corp.* . . . ."); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Because there is no direct evidence of discrimination in this case, I turn to review the *McDonnell Douglas* proof scheme.

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion*

*Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In general, to establish a prima facie claim of discrimination under *McDonnell Douglas*, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true

reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. But, the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading

requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

### III.    Discussion

#### A.  Sex Discrimination

Count I alleges that defendants terminated plaintiff because of her sex, in violation of Title VII.  *See* ECF 13, ¶¶ 38-42.  COMSO moves to dismiss Count I on two grounds: failure to exhaust administrative remedies and failure to state a claim.  According to defendant, Count I is time-barred because plaintiff filed her charge against COMSO outside the 300-day statutory period and because she initiated suit more than 90 days after the EEOC issued the right-to-sue letter.  ECF 20 at 7-15.  In addition, defendant contends that plaintiff's sex discrimination claim founders because the Complaint does not adequately plead a similarly situated comparator.  *Id.* at 15-16.

Plaintiff counters that she exhausted her administrative remedies against COMSO because her EEOC Questionnaire referenced COMSO.  ECF 23 at 3, 5.  And, plaintiff maintains that her claim is timely because she filed her complaint within 90 days of receipt of the right-to-sue letter.  *Id.* at 4.  As to the merits, plaintiff stresses that, to survive Rule 12(b)(6), her Amended Complaint need not include detailed comparator allegations.  *Id.* at 6-7.

I begin with the issue of administrative exhaustion.  As noted, as a prerequisite to filing suit, plaintiff was required to file a charge of discrimination with the EEOC or MCCR within 300 days of the allegedly unlawful employment practice.  42 U.S.C. § 2000e–5(e)(1); *see Gilbert v. Freshbikes, LLC,* 32 F. Supp. 3d 594, 605 (D. Md. 2014).  "Any discrete acts of discrimination that occurred prior to the applicable period are procedurally barred and cannot be used as a basis for recovery."  *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007).  This includes discrete acts that are related to acts alleged in timely filed charges.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  However, in such a case, the plaintiff may "us[e] the prior acts as background evidence in support of a timely claim."  *Id.*

The Fourth Circuit has admonished that the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst*., 429 F.3d 505, 510 (4th Cir. 2005). Administrative exhaustion serves important purposes, including "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas v. Huntington Ingalls Indus., Inc*., 711 F.3d 401, 406-07 (4th Cir. 2013).

COMSO argues that plaintiff's discrimination claim is barred because although she was terminated on August 5, 2016, she did not file a charge against COMSO until September 29, 2017—more than 400 days later. ECF 20 at 8; *see* ECF 20-1. In COMSO's view, plaintiff's failure to adhere to the limitations period is "fatal" to her discrimination claim. *Id.* In response, plaintiff argues that she timely exhausted her administrative remedies by submitting the EEOC Questionnaire, dated September 7, 2016. ECF 23 at 4.

The case of *Federal Express Corporation v. Holowecki*, 552 U.S. 389 (2008), is instructive in determining which form is the operative charging document for the purpose of Title VII's limitations period. In *Holowecki*, the Court addressed whether an intake questionnaire constituted the filing of a "charge" for the purpose of the Age Discrimination in Employment Act ("ADEA") if the other filing requirements were met. *Id.* at 395-97. The Court explained that an EEOC intake questionnaire qualifies as a charge if it contains "the information required by the [EEOC's] regulations" and it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. Whether a filing is a request must be determined "from the standpoint of an objective observer." *Id.*

Applying that test, the Court observed that the plaintiff's intake form "contained all of the information outlined in [the EEOC's regulations] including: the employee's name, address, and telephone number, as well as those of her employer; an allegation that she and other employees had been the victims of 'age discrimination'; the number of employees . . . and a statement indicating she had not sought the assistance of any government agency regarding this matter." *Id.* at 404. Further, the plaintiff "gave consent for the agency to disclose her identity to the employer." *Id.* at 406. And, the Court noted that plaintiff also "submitted an affidavit which detailed the allegations against the employer and culminated in a request for the agency 'to please force Federal Express to end their age discrimination.'" *Id.* Thus, the Court found that "the combination of the waiver and respondent's request in the affidavit that the agency 'force' the employer to stop discriminating against her were enough to bring the entire filing within the definition of charge" for the purposes of the ADEA. *Id.*

The ADEA's exhaustion requirement is quite similar to that for Title VII. *Grice v. Baltimore Cty.*, JFM-07-01701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5. 2008), *aff'd*, 354 F. App'x 742 (4th Cir. 2009). Accordingly, courts have applied *Holowecki* in the context of employment discrimination claims under Title VII. *See, e.g.*, *EEOC v. Phase2 Invs., Inc.*, 310 F. Supp. 3d 550, 572-73 (D. Md. 2018); *Scott v. Md. Dep't of Pub. Safety & Corr. Servs.*, CCB-14-3695, 2015 WL 5836917, at *4 (D. Md. Oct. 2, 2015); *Bland v. Fairfax Cty.*, 799 F. Supp. 2d 609, 615-17 (E.D. Va. 2011).

Against this backdrop, I am satisfied that plaintiff's EEOC Questionnaire serves as the "Charge" for the purpose of Title VII's limitations period. Plaintiff's submission contains the information required by the EEOC's regulations. *See* 29 C.F.R. § 1601.12 (EEOC regulation setting forth the information that a "Charge" should contain). Ms. Rodgers included her name,

address, contact information, employment information, and a statement describing the basis of the plaintiff's complaint for employment discrimination. *See* ECF 23-1. The EEOC Questionnaire also satisfies *Holowecki*'s other requirements. Plaintiff checked the box on her EEOC Questionnaire that states: "I want to file a charge of discrimination . . . ." *Id.* at 4. In doing so, plaintiff acknowledged that the "**EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name**." *Id.* (emphasis in original). Moreover, plaintiff asserted that she was terminated on the basis of sex; claimed that she was fired by Jerome Lopez, who put two male employees on probation; and she named two similarly-situated male coworkers who were allegedly treated better than she was treated. *Id.* at 2.

As indicated, plaintiff completed her EEOC Questionnaire on September 6, 2016. Therefore, Ms. Rodger's Title VII claims may be based on events that occurred as far back as November 11, 2015. The date of August 5, 2016 is well within that 300-day window. Therefore, plaintiff has satisfied Title's VII limitations period.

This does not end the inquiry, however. COMSO argues that plaintiff's EEOC Questionnaire does not evidence an intent by plaintiff to invoke the EEOC's remedial machinery as against COMSO. ECF 31 at 4-7. In particular, on the Intake Questionnaire, plaintiff asserted that she was subject to discrimination by "Prime Contractor (EA/CSRA)." ECF 23-1 at 1. And, in response to the question for "Organization Contact Information," she identified "Eagle Alliance/CSRA Inc" as the organization. *Id.*

In addition to its timeliness requirement, Title VII's administrative exhaustion process has substantive effect. It limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor*, 681 F.3d at 593;

*Causey v. Blog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996).

The naming requirement follows from the text of Title VII, which provides that an "aggrieved party" who satisfies the strictures of administrative exhaustion may bring a "civil action . . . against the respondent named in the charge . . . ." 42 U.S.C. § 2000e–5(f)(1). More than a "mere technicality," the naming requirement serves to "'notif[y] the charged party of the asserted violation,'" thus "'permit[ting] effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'" *Alvarado v. Bd. of Tr's of Montgomery Cmty. Coll.*, 848 F.2d 457, 458 (4th Cir. 1988) (citation omitted); *see, e.g.*, *Talbot v. U.S. Foodservice*, 204 F. Supp. 2d 881, 883 (D. Md. 2002) (plaintiff's Title VII claims against union were barred because EEOC charge only mentioned employer).

The same rule applies with equal force to claims. Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has taught that "'[a] claim will . . . typically be barred if the administrative charge alleges one type of discrimination— such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156, 161 (4th Cir. 2018) (alterations in *Nnadozie*) (quoting *Chacko*, 429 F.3d at 509).

That said, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Following this injunction, courts in the Fourth Circuit have declined to blindly enforce the naming

requirement, instead concluding that substantial compliance suffices. *See EEOC v. 1618 Concepts, Inc.*, ___ F. Supp. 3d ___, 2020 WL 87994, at *4 (M.D.N.C. Jan. 7, 2020) (collecting cases); *see, e.g.*, *Davis v. BBR Mgmt., LLC*, DKC-10-552, 2011 WL 337342, at *5 (D. Md. Jan. 31, 2011) (holding that the EEOC charge need only put the defendant on notice of the claims and enable the EEOC to determine the relevant participants for reconciliation). Similarly, federal courts may hear claims not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705.

Applying these principles here, the EEOC Questionnaire adequately identifies COMSO. Indeed, the EEOC Questionnaire twice references COMSO. First, in providing the reasons that were given for plaintiff's termination, she stated, ECF 23-1 at 2: "My company and I were not notified until afterwards. My company is Comso INC in Greenbelt, MD. The company who fired me is the prime company EA/CSRA Inc. in Annap. Junction, MD." Second, in responding to whether plaintiff had sought help prior to contacting the EEOC, she explained, *id.* at 4: "My Company Comso tried to request an HR EA investigation on 8/516 – 8/12/16. No Results."

These averments identify COMSO by name, convey its relationship to plaintiff, and provide its location. The assertions are sufficient to alert the EEOC of COMSO, such that it could provide notice to COMSO of plaintiff's complaint and seek its participation in the reconciliation process. Moreover, plaintiff alleges that COMSO was notified of plaintiff's first EEOC charge "shortly after it was filed" on September 8, 2016—just six days after she submitted her EEOC Questionnaire. ECF 13, ¶ 33. Plaintiff's failure to list COMSO as an employer on the EEOC Questionnaire does not compel the dismissal of her discrimination claim.

Nevertheless, plaintiff's discrimination claim does not fall within the compass of the EEOC Questionnaire. Indeed, a generous reading of the EEOC Questionnaire does not even hint that plaintiff sought to assert Title VII claims against COMSO.

The EEOC Questionnaire asked plaintiff to identify the "**organization(s)**" that discriminated against her. ECF 23-1 at 1 (emphasis in original). And, it instructed: "**If more than one employer is involved, attach additional sheets**." *Id.* (emphasis in original). Despite these directions, Ms. Rodgers only identified "Prime Contractor (EA/CSRA)" as the entity that discriminated against her. *Id.* Moreover, the averments in the EEOC Questionnaire pertain to EA/CSRA. In the narrative portion, plaintiff stated, *id.* at 2: "I was Retaliated against due to a complaint filed by EA manager Chris Michaels against Jerome Lopez in Nov 2015. In April 2016, EA made Jerome Lopez my manger where he fired me on 8/05/16. He put the men on probation and fired me." And, as noted above, plaintiff stated that the "company who fired me is the prime company EA/CSRA Inc . . . ." *Id.*

The absence of allegations concerning COMSO is notable in this context. The EEOC Questionnaire alleges EA/CSRA discriminated against plaintiff. Yet, in the suit, she alleges that COMSO also played a role in her termination. Simply put, plaintiff's EEOC Questionnaire and her Complaint implicate different entities.

To be sure, the "touchstone" for exhaustion is that the plaintiff's administrative and judicial claims must be "'reasonably related,'" not identical. *Sydnor*, 681 F.3d at 595 (citation omitted). But, a charge and a complaint are not reasonably related where they "involve shifting sets and a rotating cast of characters that would have deprived her former employer of notice of the allegations against it." *Id.*; *see Chacko*, 429 F.3d at 512 (holding that a plaintiff fails to exhaust remedies where the "administrative charges reference different time frames, actors, and

discriminatory conduct than the central factual allegations in [the] formal suit").  It follows that a reasonable investigation of plaintiff's EEOC Questionnaire could not have been expected to reveal illegal conduct on the part of COMSO.  *See, e.g.*, *Baiden-Adams v. Forsythe Transp., Inc.*, 969 F. Supp. 2d 422, 429 (E.D. Va. 2013) (plaintiff failed exhaust Title VII administrative remedies where the EEOC charge and complaint "address significantly different actors").  Therefore, Ms. Rodgers failed to exhaust her administrative remedies as to her discrimination claim against COMSO.

Accordingly, I shall grant the Motion as to Count I.

## B.  Retaliation (Count II)

In Count II, plaintiff alleges that defendants retaliated against her for engaging in protected activities by "preventing her from obtaining another position on the NSA contract."  ECF 13, ¶ 44.  As with Count I, COMSO challenges plaintiff's retaliation claim on exhaustion grounds, asserting that plaintiff never identified retaliation as a basis for her suit against COMSO in her EEOC materials  ECF 20 at 7-15.  Further, COMSO posits that plaintiff's allegations do not support a claim for retaliation.  *Id.* at 17-19.

Here too, I turn first to exhaustion.  For plaintiff to have a viable retaliation claim, she needed to file a charge with the EEOC or the MCCR within 300 days of the alleged retaliatory act.  *See* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff claims that she told COMSO's Program Manager in August 2016 of her intent to file an EEOC complaint and was warned of being "'blackballed'" if she did.  ECF 13, ¶ 5.  Further, the Amended Complaint alleges that in both September and November 2016, defendants prevented Ms. Rodgers from obtaining a position on either the NSA contract or other EA/CSRA contracts.  *Id.* ¶¶ 35-36.  Thus, although the Amended Complaint

lacks precise dates, plaintiff needed to file a charge specifying retaliation—at the very latest—before the end of September 2017.

Regarding plaintiff's EEOC activities, she submitted her EEOC Questionnaire on September 2, 2016. ECF 23-1. She allegedly submitted her a charge on September 8, 2016, checking the box for sex discrimination and listing EA/CSRA as her sole employer. ECF 13, ¶ 6. On November 2, 2013, plaintiff allegedly submitted a second charge against EA/CSRA for retaliation. *Id.* And, plaintiff filed the MCCR Charge against COMSO on September 29, 2017. *Id.* ¶ 10; *see* ECF 20-1.

These materials do not satisfy the requirements of administrative exhaustion as to plaintiff's retaliation claim against COMSO. The EEOC Questionnaire and the Charge of September 2016 are out of the running because they were filed either before or contemporaneous to the alleged retaliatory acts. Likewise, the second Charge is of no aid given that plaintiff acknowledges that it was tailored to EA/CSRA, as opposed to COMSO. ECF 13, ¶ 7.

The third Charge is directed at COMSO. *See* ECF 20-1. Although the third Charge could satisfy Title VII's 300-day limitations window, the assertions in the MCCR Charge concern sex discrimination, not retaliation. It is well established that a charge complaining of a discrete act or act does not allow a plaintiff to pursue a broader pattern of misconduct in federal court. *See Chacko*, 429 F.3d at 509; *accord Shipman v. United Parcel Serv.*, 581 F. App'x 185, 187 (4th Cir. 2014) (district court was "correct" in finding plaintiff failed to exhaust retaliation claim where EEOC charge "described only a single act of age, race, and sex discrimination"); *Miles v. Dell, Inc.*, 429 F.3d 480, 490-92 (4th Cir. 2005) (charge of discrimination did not exhaust retaliation claim); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (same); *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir. 1999) (same).

That is precisely the circumstance here. Plaintiff's narrative in the MCCR Charge does not contain even one fact that alludes to retaliation by COMSO or COMSO's effort to block plaintiff from obtaining another position. Specifically, plaintiff averred: "I believe I have been discriminated against because of my sex (Female) with respect to discharge in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at 1. The omission of retaliatory conduct is especially glaring given that the MCCR Charge was filed *after* plaintiff filed a Charge complaining of retaliation in regard to EA/CSRA. Consequently, plaintiff failed to exhaust her administrative remedies as to her retaliation claim to the extent that it is lodged against COMSO.

Plaintiff resists this conclusion by appealing to the Court's sense of justice and fair play. ECF 23 at 5. Seeking to divert blame, plaintiff argues the "EEOC should have drafted a retaliation charge against COMSO," and this "error should not prevent [her] from maintaining a retaliation claim against COMSO." *Id.* Plaintiff points to no authority in support of her argument, and I am unaware of any, that would permit me to ignore the plain text of Title VII. In my view, embracing plaintiff's position would all but eviscerate the "primary purposes of notice and reconciliation" that underpin Title VII's administrative exhaustion requirements. *Chacko*, 429 F.3d at 510.

Accordingly, I shall grant the Motion as to Count II.

## IV.    Conclusion

For the reasons stated above, I shall grant the Motion (ECF 19). An Order follows, consistent with this Memorandum Opinion.


Date:   April 3, 2020                              _____/s/_____
                                                   Ellen Lipton Hollander
                                                   United States District Judge